| | |
|---|---|
| VIRGINIA SILANO and GREGORY MARCONI,<br>    *Plaintiffs*,<br>     *v.*<br>VICTORIA SCARNULY-GRASSO, DANIEL SILVA,<br>ROCCO TESTI, KEVIN HAMMEL, and the TOWN<br>OF TRUMBULL, CONNECTICUT<br>    *Defendants*. | Civil No. 3:12-cv-1732 (JBA)<br><br>June 28, 2017 |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs Virginia Silano and Gregory Marconi bring this complaint *pro se* against Defendants Victoria Scarnuly-Grasso, the Town of Trumbull (the "Town"), Daniel Silva ("Officer Silva"), Rocco Testi ("Detective Testi"), and Kevin Hammel ("Detective Hammel") (together with the Town, Officer Silva, and Detective Testi, the "Trumbull Defendants") alleging defamation per se (Count I) and libel per se (Count II) against Ms. Scarnuly-Grasso; negligence per se against Ms. Scarnuly-Grasso (Count III); a "Stigma Plus" violation of the ADA against Officer Silva that is construed, upon consent of the parties, as a defamation claim against Officer Silva (Count IV); a claim of civil conspiracy to maliciously prosecute against Ms. Scarnuly-Grasso and the Trumbull Defendants (Count V), violation of 42 U.S.C. § 1983 against the Town of Trumbull (the "Monell Claim") (Count VI); and slander per se against Ms. Scarnuly-Grasso predicated on a different set of facts (Count VII). Ms. Scarnuly-Grasso moves [Doc. # 39] to dismiss the claims against her and the Trumbull Defendants move [Doc. # 58] to dismiss the claims against them.

## I. Facts Alleged

The Amended Complaint ("Compl.") [Doc. # 69] sets forth a history of disputes Plaintiff Silano has with two neighbors, non-party Thomas Chetlen and Defendant Scarnuly-Grasso, that

began in the summer of 2010. (Compl. at 9.)[1] These disputes, and the interactions with police that occurred in conjunction with them, give rise to the causes of action set forth in the Complaint.

### A. Interactions with Mr. Chetlen and Non-party Officer Wheeler

In late May, 2010, Ms. Silano complained to the Bridgeport Police Department that she had been harassed and assaulted by non-party Thomas Chetlen, who is Ms. Silano's neighbor. (Compl. at 18.) As a result of this complaint, the police warned Mr. Chetlen to stay away at risk of arrest. (*Id.*)

Mr. Chetlen and Ms. Silano had a further altercation on June 25, 2010 when Mr. Chetlen allegedly drove into Ms. Silano while she was crossing the street. (*Id.* at 19.) After calling 911, Ms. Silano was interviewed by non-party Trumbull Police Officer Daniel Wheeler. Officer Wheeler issued a citation to Mr. Chetlen for failing to stay in his lane and arrested Ms. Silano for criminal mischief. (*Id.* at 20.)

### B. Interactions with Mr. Chetlen and Officer Silva

Some six weeks later, on August 10, 2010, Plaintiff Silano and Mr. Chetlen had a further altercation in a nearby park when Ms. Silano encountered Mr. Chetlen while walking her dogs. (*See* Ex. D ("Aug. 10 Incident Report") to Compl.) After Mr. Chetlen and Ms. Silano both contacted the Trumbull police, Officer Silva visited them and took down a report. (*Id.*) Plaintiffs allege the report misrepresented what Ms. Silano told Officer Silva in an attempt to "cast [Ms.] Silano as mentally unstable" and in retaliation for Ms. Silano's complaints to the police. (Compl. at 9, 20.)

---

[1] Because the Amended Complaint repeats paragraph numbers in each section, it will be cited by page number rather than paragraph number.

The Aug. 10 Incident Report first details Mr. Chetlen's version of events and then recounts Ms. Silano's version. Ms. Silano described an on-going dispute with Mr. Chetlen. (*Id.*) Officer Silva's Aug. 10, 2010 report notes in its final sentence, "on a final note, [Ms. Silano] mentioned that she ha[s] psychological issues that she is dealing with, and added that it runs in the family." (*Id.*)

On August 31, 2010, Ms. Silano sent a letter to the Town Clerk of Trumbull providing notice of her "Intention to Commence an Action for Intentional [In]fliction of Emotional Distress, Dereliction of Duties, [and] Filing a False Police Report." (*See* Ex. G. ("Aug. 31 Letter") to Compl.) This letter sets forth Ms. Silano's description of her interaction with Officer Silva.

In the letter, Ms. Silano stated that she told Officer Silva, "if Mr. Chetlen came onto [her] property again, [she] would shoot him." (*Id.*) The Aug. 31 Letter also lists details that Officer Silva allegedly omitted from his Aug. 10 report, including the fact that Officer Silva told Ms. Silano that "if Mr. Chetlen continues to complain about [Ms. Silano], [she] would be arrested or worse, committed to a mental institution . . . ." (Aug. 31 Letter.)

### C. Autumn Interactions between Plaintiff Silano and Defendant Scarnuly-Grasso

In an apparently unrelated incident, on or about September 6, 2010, Ms. Silano observed Defendant Scarnuly-Grasso assaulting a child in the street in front of Ms. Silano's home. Ms. Silano ran out of her home "and screamed obscenities at Scarnuly-Grasso in order to stop" the assault. (Compl. at 3.)

On September 28, 2010, Plaintiffs allege that Ms. Scarnuly-Grasso entered Ms. Silano's home and threatened Ms. Silano "with action by the Trumbull Police Department (specifically Testi) if Silano spoke about the child abuse incident or continued to complain about George Cooney's sale of Pepsi at the Pinewood lake association." (*Id.*) On October 22, 2010 Ms. Scarnuly-Grasso returned to Plaintiff Silano's home and "ma[de] statements about working with the police

and Honis. . . ." (*Id.*) On November 6, 2010, Plaintiffs allege that Plaintiff Silano and her husband Plaintiff Marconi attended a wine-tasting event at which she was accosted by Ms. Scarnuly-Grasso. (*Id.*)

### D.    November Interactions with Ms. Scarnuly-Grasso

Plaintiffs allege that on November 9, 2010 Ms. Scarnuly-Grasso intentionally gave a report both orally and in writing to the Trumbull police department that falsely claimed Ms. Silano had threatened her, harassed her, and created a public disturbance. (Compl. at 2; *see* Ex. A. ("Nov. 9 Scarnuly-Grasso Complaint to Police") to Compl.) Officer Silva memorialized Ms. Scarnuly's complaint in an Incident Report (Ex. B ("Nov. 9 Incident Report") to Compl.).

Ms. Scarnuly-Grasso's seven-page handwritten complaint describes, among many other incidents, a phone call on the evening of November 8, 2010 "where [Ms. Silano] threatened [Ms. Scarnuly-Grasso by saying,] 'This is not over and I will finish you off'" (Nov. 9 Scarnuly-Grasso Complaint to Police. at 4-5.) Ms. Scarnuly-Grasso also stated that she had been "threatened" by Ms. Silano (*id.* at 6).

As a result of the Nov. 9 Complaint to Police, Officer Silva interviewed Ms. Silano at her home on Nov. 12, 2010. (Compl. at 11.) During this meeting, the Complaint alleges that Ms. Silano provided her version of the events with Ms. Scarnuly-Grasso and told Officer Silva that she had seen Ms. Scarnuly-Grasso abusing a child. The Complaint alleges that Officer Silva refused to mention the child abuse in his Nov. 12 Incident Report, and that this omission is part of the conspiracy to prosecute Ms. Silano for falsely reporting child abuse to DCF. (*See* Ex. E ("Nov. 12 Incident Report") to Compl.)

On November 22, 2010, Ms. Silano delivered a three-page written statement to the Trumbull Police Department, which was received by Officer Driscoll and forwarded to Officer

Silva. (Compl. at 21; *see* Ex. J ("Nov. 22 Silano Complaint to Police") to Compl.) Plaintiffs allege that this statement laid out the allegations of harassment and child abuse against Ms. Scarnuly-Grasso. (Compl. at 21.)

Officer Testi later interviewed Ms. Scarnuly-Grasso to follow up on her original November 9 complaint of harassment and wrote up his interview notes. (*See* Ex. C ("Nov. 24 Incident Report") to Compl.)[2] In this report, he noted Ms. Scarnuly-Grasso did not want to press charges against Ms. Silano. (*Id.*) On December 1, 2010, Officer Testi followed up with a telephone call to Ms. Silano. (*Id.*) Officer Testi described their conversation in the Nov. 24 Incident Report:

> On 12/01/10, I . . . spoke via telephone with Virginia Silano regarding this incident. Silano seemed very irritated with Scarnuly in regards to other incidents that occurred between the two and other parties in the past. I explained to [her] that from this phone call forward if she contacts Scarnuly in any way . . . as well as goes on her property she will be arrested. Silano stated she understood this warning.

(Nov. 24 Incident Report.) Plaintiffs allege that this report contains material omissions. During the conversation, Officer Testi allegedly stated that it was the Trumbull Police Department's policy and custom "to withhold police services from individuals the Department regards as mentally disabled" and that the Trumbull police department regarded Ms. Silano as "crazy." (Compl. at 9.)

E.    **Encounters with Chetlen and Scarnuly-Grasso in early 2011**

In January 2011, Mr. Chetlen came to Ms. Silano's house, prompting her to call 911. Officer Wheeler of the Trumbull Police Department responded to the call and subsequently arrested Ms. Silano on the ground that she "ran out in to the street and threatened to shoot [Mr. Chetlen]." (Compl. at 22.)

---

[2] Although the Nov. 24 Police Report is dated Nov. 24, it contains two entries, one for that date and one for a week later, Dec. 1, 2010.

In February 2011, Plaintiffs allege that Ms. Scarnuly-Grasso accused Plaintiff Marconi of "aiding and abetting" Ms. Silano in committing crimes against Ms. Scarnuly-Grasso and against Mr. Chetlen. The Complaint states, "While this meeting was never memorialized by the Association in writing, it was recorded via audio. Scarnuly-Grasso instigated the Board to fire me [Plaintiff Marconi] from my employment at the Association . . . because . . . I didn't stop my wife from harassing Scarnuly-Grasso and because the guns in my house were registered to me." (Compl. at 31.)[3]

F.      **Police Reports Made Available to Others**

Plaintiffs allege that on or about February 9, 2011, the Trumbull Police Department provided a copy of the August 10, 2010 Incident Report to non-parties George or Diana Cooney. Ms. Scarnuly-Grasso provided copies of the August 10, November 9, and November 24 Incident Reports to the Pinewood Lake Association on May 5, 2011, and then to the Department of Children and Families ("DCF") on May 19, 2011. (*Id* at 4.)

G.      **DCF Investigation and Arrest of Ms. Silano**

On April 26, 2011, Plaintiff Silano called Connecticut's Department of Children and Families to report the September 6, 2010 incident in which she saw Ms. Scarnuly-Grasso strike a child. (Ex. A ("Hammel Aff.") to Trumbull Defendants' Mot. to Dismiss [Doc. # 58-2] at 5.)[4] After

---

[3] The Complaint does not make clear where this meeting took place, to whom the accusation was made, or the context in which it was made.

[4] The date of the call to DCF is taken from Detective Hammel's affidavit, which was attached to the Trumbull Defendants' motion to dismiss as Exhibit A. Detective Hammel submitted the affidavit to the state's attorney in seeking an arrest warrant for Ms. Silano. Since Ms. Silano alleges conspiracy to maliciously prosecute her, and since the arrest is part of the conspiracy, Detective Hammel's affidavit is properly before the court. However, the Court will only use the affidavit to date the complaint to DCF and will not take notice of the facts alleged therein.

investigating this complaint, DCF adjudicated it as unsubstantiated at intake. The Complaint alleges that Detective Hammel both failed to fully investigate the complaint to DCF and that he ultimately arrested her for falsely reporting child abuse to DCF.

### H. Events of 2012

In May of 2012, Ms. Silano told Detective Hammel about a recording she made of non-parties Mr. Chetlen, Mr. Willliam Verespy and Mr. George Cooney in which they described a plot to kill Ms. Silano. (Compl. at 23.) Ms. Silano attempted to provide this recording to Detective Hammel and State's Attorney Kevin Drumm, but they refused to accept it. (*Id.*) The audio recording also contains evidence that Detective Hammel plotted to entrap Ms. Silano and he plotted to entrap Ms. Silano's former attorney, Mr. Crozier, for money-laundering. (*Id.*) In August 2012, Detective Hammel again arrested Ms. Silano for violation of the no-contact order. (*Id.* at 24.) In April, 2013, Detective Hammel arrested Ms. Silano for filing a false report with the police. (*Id.* at 25.)

## II. Procedural Posture

Plaintiffs filed their complaint in the Superior Court, Judicial District of Fairfield, on November 7, 2012, and Defendants removed to federal court on December 10, 2012. The original complaint pleaded "False Statement" against Defendant Scarnuly-Grasso (Count I), "Stalking" against Defendant Scarnuly-Grasso (Count II), and violation of 42 U.S.C. § 1983 against Officers Silva (Count III) and Testi (Count IV) on the basis of equal protection violations arising from attempts cast Ms. Silano as mentally ill in police reports. On December 26, 2012, the Court stayed the case [Doc. # 8] pending resolution of one of the state criminal cases underlying the complaint and restored it to the active docket on July 28, 2016 [Doc. # 11]. On February 22, 2017, the Court granted [Doc., # 57] Plaintiffs' motion to amend their complaint, adding the Town of Trumbull

and Detective Hammel as defendants, adding and modifying the causes of action, and modifying some of the factual allegations.

## III. Discussion[5]

Ms. Scarnuly-Grasso moves to dismiss Counts I, II, III, V, and VII. She moves to dismiss Counts I, II, and VII—the defamation *per se* claims—because Plaintiffs fail to allege that she charged them with crimes of moral turpitude as required under Connecticut law. She argues that Count III, the negligence *per se* claim predicated on violation of the Connecticut criminal harassment charge, should be dismissed because there is no private cause of action for harassment in Connecticut. Count V, which alleges a conspiracy to maliciously prosecute Ms. Silano, should be dismissed as to Ms. Scarnuly-Grasso because Plaintiffs fail to allege that she acted in concert with the Trumbull Defendants.

The Trumbull Defendants move to dismiss Counts IV, V, and VI. They argue that all claims should be dismissed as time-barred. Count V, conspiracy to maliciously prosecute, should also be

---

[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

"[A] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)

dismissed because Plaintiffs have not pleaded an underlying tort, the allegations do not rebut the presumption of probable cause created by issuance of the arrest warrant, several of the defendants did not initiate the prosecution, and the arresting officer made a full and fair disclosure to the prosecuting attorney. Count VI, the Monell claim, which alleges that the town had a policy and practice of refusing to help, should be dismissed because Plaintiffs fail to allege a policy or custom in all but conclusory fashion.

### A. Counts I and II: Defamation *Per Se*

Counts I and II allege libel and slander per se against Ms. Scarnuly-Grasso for the written and oral complaints she furnished to the Trumbull Police Department on November 9, 2010. Under Connecticut law, a defamatory statement is "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Levesque v. Town of Vernon,* 341 F.Supp.2d 126, 140 (D. Conn. 2004). To establish a prima facie case of defamation, a plaintiff must show that "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chemical Co.,* 267 Conn. 210, 217 (2004) (internal quotations and citations omitted). "Truth is a complete defense to a suit for defamation." *Timbro v. Hertler,* 2006 WL 1230560 at *3 (Conn. Super. Ct. April 24, 2006) (internal citations omitted) (citing *Strada v. Connecticut Newspapers, Inc.,* 193 Conn. 313, 316 (1984)).

"Libel or slander is . . . actionable per se if it charges a crime involving moral turpitude or to which an infamous penalty is attached." *Miles v. Perry,* 11 Conn. App. 584, 602 (1987). "The modern view of this requirement is that the crime be a chargeable offense which is punishable by

imprisonment." *Gleason v. Smolinski*, 319 Conn. 394, 431 n.31 (2015) "Whether words are actionable *per se* is a question of law for the court." *Id.*

In her Motion to Dismiss, Ms. Scarnuly-Grasso argues that a fair reading of the complaint she made to the police shows no allegation of commission of a crime punishable by imprisonment. Rather, she "simply described her interactions with Ms. Silano and explained how she felt as a result of those interactions." (Mem. Supp. Scarnuly-Grasso Mot. to Dismiss ("Scarnuly Mot. to Dismiss") [Doc. # 39-1] at 7-8.) However, the text of her written complaint belies this characterization. That complaint states, in pertinent part,

> [On] Nov. 8, 2010 at 5:25, Greg [Marconi] called me and put his wife [Plaintiff Silano] on the phone and said talk to her. Our conversation lasted under 2 minutes where she threatened me. She . . . screamed at me saying, 'That this is not over and I will finish you off.'"

(Complaint to Police at 2.)

The Connecticut Penal Code defines "Threatening in the Second degree: Class A misdemeanor or class D felony" (punishable by no more than one year in prison) in the following manner:

> (a) A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) (A) such person threatens to commit any crime of violence with the intent to terrorize another person, or (B) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror. . . . (b) threatening is a Class A misdemeanor . . . .

Conn. Gen. Stat. Ann. § 53a-62. The Supreme Court of Connecticut has found that to be actionable as a threat, a statement must explicitly threaten violence. *State v. Krijger*, 313 Conn. 434, 452 (2014) (statements that "I'm going to be there to watch it happen" and "more of what happened to your

son [being gravely injured in an auto accident] is going to happen to you" are insufficiently explicit; whereas "I'm going to kick your ass" is sufficient).

As Ms. Scarnuly-Grasso conceded at oral argument, the allegations in the Complaint set forth a statement that would qualify as a threat under Conn. Gen. Stat. § 53a-62 and thus are capable of surviving a motion to dismiss. However, it should be noted that the Complaint alleges Mr. Marconi heard his wife, Ms. Silano, say the following to Ms. Scarnuly: "then I heard my wife threaten Scarnuly-Grasso with a civil lawsuit . . . At no time did my wife threaten Scarnuly-Grasso in any way, other than to sue her and finish her, financially." (Compl. at 30.) The parties thus appear to dispute whether Ms. Silano said "I will finish you off" or "I will finish you financially." This question cannot be resolved on a motion to dismiss and thus Counts I and II will not be dismissed.

### B. Count VII: Slander *Per Se*

In Count VII, Plaintiffs allege that Mr. Marconi was slandered by Ms. Scarnuly-Grasso on two occasions: first, in connection with her November 9, 2010 complaint to police, and second, when

> in March or February of 2011, [she] accused [Mr. Marconi] of 'aiding and abetting' [Ms. Silano] in committing crimes against [Ms. Scarnuly-Grasso] and Chetlen. . . . Scarnuly-Grasso charged, I didn't stop my wife from harassing Scarnuly-Grasso and . . . the guns in my house were registered to me.

(Compl. at 31.)

Defendant Scarnuly-Grasso argues that the first claim should be dismissed because nowhere in the Nov. 9 Complaint to Police did Ms. Scarnuly-Grasso assert that Mr. Marconi had committed a crime. (Scarnuly Mot. to Dismiss at 11.) Plaintiffs' Opposition does not respond to this argument and the Complaint fails to identify any statement in the Nov. 9 complaint alleging

that Mr. Marconi committed a crime. Thus, the slander *per se* claim predicated on the Nov. 9 Complaint must be dismissed.

Defendant Scarnuly-Grasso argues that the slander *per se* claim based on the February 2011 claim of aiding and abetting should be dismissed because this allegation was only inserted into the amended complaint, does not relate to the allegations made in the original complaint, and is therefore outside the statute of limitations. (*Id.* at 11-12.)

The original complaint, filed on November 7, 2012, did not contain any claim of Mr. Marconi being defamed and did not mention any statements about his role in helping Ms. Silano commit any crime. There is one brief, very vague mention of events in the Spring of 2011: "During the months of March, April and May of 2011, Scarnuly as governor of the Pinewood Lake Association proceed[ed] to present to the board that both Marconi . . . and Silano should be terminated as members due to their 'behavior.'" (Original Complaint [Doc. # 1-7] at Count II, ¶9(j).) This vague mention, however, was not substantially connected to any of the causes of action in the original complaint. It was recited in support of a claim of stalking against Ms. Scarnuly-Grasso.

Rule 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[E]ven where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." *Caldwell v. Berlind*, 543 F. App'x 37, 40 (2d Cir. 2013). Here, the alleged defamation of Mr. Marconi at a neighborhood association meeting simply does not arise out of the same conduct, transaction, or occurrence set out in the original pleading. Further, the original complaint makes

no mention of any kind of libel or slander of Mr. Marconi. Therefore, the claim of slander *per* se predicated on the February 2011 allegation does not relate back to the date of the original complaint.

Because the February 2011 allegation of slander *per se* does not relate back, the Court must determine if the allegation is timely or, as Defendnat Scarnuly claims, barred by the statute of limitations. Conn. Gen. Stat. § 52-597 provides: "No action for libel or slander shall be brought but within two years from the date of the act complained of." The statute of limitations for a slander claim begins on the date of publication, and each publication gives rise to a new cause of action. *Cwelinsky v. Mobil Chemical Co.,* 267 Conn. 210, 224, 837 A.2d 759 (2004). The slander *per se* alleged in Count VII took place in the spring of 2011, and Plaintiffs have made no allegation of repetition or republication. Plaintiffs sought leave to file an amended complaint on November 23, 2016 (see Doc. # 38). More than four years elapsed between the alleged slander and the amendment of the Complaint to include these allegations.

The claim of slander *per se* predicated on the November 9 Complaint does not sufficiently plead facts supporting slander *per* se. The claims predicated on the February 2011 comments are barred by the applicable statute of limitations. For this reason, Count VII must be dismissed.

## C.  Count III: Negligence *Per Se*

In Count III, Plaintiffs allege harassment or negligence per se against Ms. Scarnuly-Grasso on the basis of the interactions between Ms. Silano and Ms. Scarnuly-Grasso recounted in the fact section above.

Defendant Scarnuly-Grasso moves to dismiss Count III because Connecticut does not recognize a civil claim for harassment. *See Holt v. Safeco Ins. Co. of Am.*, No. FSTCV136017661S, 2016 WL 4744129, at *7 (Conn. Super. Ct. Aug. 8, 2016) ("The court can find no case . . . in which

any Connecticut court has recognized harassment as a civil cause of action.") Plaintiffs respond that Count III is actually a negligence *per se* count predicated on Defendant Scarnuly-Grasso's harassment of Plaintiff Silano in violation of the Connecticut Penal Code and they argue that several Connecticut superior courts have permitted parties to shoehorn a harassment claim under a theory of negligence *per se*:

> Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles. In order to establish liability as a result of a statutory violation, a plaintiff must satisfy two conditions. First, the plaintiff must be within the class of persons protected by the statute. Second, the injury must be of the type which the statute was intended to prevent.

*Shackles v. Pfizer, Inc.*, No. 565313, 2003 WL 22905176, at *4 (Conn. Super. Ct. Dec. 1, 2003) (internal citations and alterations omitted); *see also Whitnum v. Robinson*, No. FSTCV125013822S, 2013 WL 2132120, at *3 (Conn. Super. Ct. Apr. 30, 2013).

While Plaintiffs are correct about the mechanism by which negligence *per se* can be used to create a private cause of action for violation of certain penal statutes, they have not alleged sufficient facts that the underlying penal statute on which they rely was violated.

Conn. Gen. Stat. § 53a-183, "Harassment in the Second Degree" defines harassment in the following manner:

> (a) A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm; or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm.

The Connecticut Supreme Court has held that this statute does not prohibit the content of certain conversations, which would conflict with First Amendment principles, but prohibits a manner of communicating with a person:

> As we have explained, courts uniformly have concluded that it is the placing of the telephone call and the circumstances surrounding that act, such as the time of the call and the number of calls placed—rather than the content of the call—that may be considered in determining whether the call was made "*in a manner* likely to cause annoyance or alarm [in violation of § 53a-183] . . . . [However] the manner in which a call is made encompasses its content, and is not confined solely to the timing and placement of the call.

*State v. Moulton*, 310 Conn. 337, 357–58 (2013). The only telephone call described in the Complaint involves Ms. Silano threatening to "finish off" or to "finish financially" Ms. Scarnuly-Grasso. There is no fact pleaded in the Complaint that indicates Ms. Scarnuly-Grasso called, faxed, or emailed Ms. Silano with the intent to annoy her. Thus, Ms. Silano's injury is not of the type that this criminal statute seeks to prevent. Because the Complaint does not allege facts sufficient to support a violation of the Conn. Gen. Stat. § 52a-183, it cannot support an allegation of negligence *per se*.

### D.    Count IV: Defamation by Silva

Plaintiffs' Fourth Count, entitled "Stigma-Plus, Violation of ADA," was discussed at length during the pre-filing conference at which the parties agreed to treat Count IV as a claim for defamation and for violation of First Amendment rights. The Trumbull Defendants moved to dismiss Count IV under both theories. In response, Plaintiffs abandoned their first amendment claims: "Plaintiff has made no attempt to plead an independent Connecticut Constitution Article I, Sec. 4 violation . . . or an independent First Amendment Claim." (Opp'n to Trumbull Mot. to Dismiss [Doc. # 63] at 7.) Accordingly, the Court construes Count IV to include only allegations

of defamation against Officer Silva. Plaintiffs clarify in their opposition to the Trumbull Defendants' Motion to Dismiss that "the specific statement at issue is Silva's August 10, 2010 report." (Opp'n to Trumbull Mot. to Dismiss at 23.)

Plaintiffs allege that the August 2010 Incident Report is defamatory because it "misquotes Plaintiff," "criminalizes [Ms. Silano] instead of Chetlen," and "falsely report[s] that Plaintiff stated she has psychological problems which run in the family." The specific sentence alleged to be defamatory reads: "On a final note, [Ms. Silano] mentioned that she ha[s] psychological issues that she is dealing with, and added that it runs in the family." (Ex. D to Opp'n to Trumbull Defs.)[6]

Plaintiffs allege Officer Silva "published it again on November 9, 2010." (Opp'n to Trumbull Defs. at 24.) However, the Nov. 9, 2010 Incident Report does not reassert this claim; there is no mention of Ms. Silano's mental health status in that Incident Report. In their Opposition, Plaintiffs clarify that they believe the following sentence from the November 9, 2010 Incident Report is sufficient to support an allegation of republication: "Silano is no stranger to neighbor disputes/harassments, as she has several complaints made against her by other neighbors, with court action pending. (See TPD CRN #10-11641, TPD CRN# 10-8483, TPD CRN# 10-14509, TPD CRN# 10-13842, TPD CRN# 10-13590, TPD CRN# 10-9253, and TPD CRN# 10-12841.)" (Nov. 9 Incident Report.) The first pending complaint referred to, 10-11641, is the August 10, 2010 Incident Report that contains the allegedly defamatory statement. Plaintiffs allege that readers of the November 9, 2010 Incident Report would read the August 10 Incident Report and "consider

---

[6] The Incident Report refers to Plaintiff Silano by her husband's last name, Marconi. For clarity in this Ruling, the Court has replaced "Marconi" with "Ms. Silano."

both reports and form an adverse opinion concerning Plainitff as to her mental stability and her culpability." (Opp'n to Trumbull Defs. at 24.)

Plaintiffs further allege that Officer Silva "republished [this report] on or about December 1, 2010 to [Detective] Testi." They base this allegation on the first three sentences of the Nov. 24 Incident Report: "On 11/24/10, I (Det. Testi) was assigned to further investigate a harassment complaint. The complainant (Victoria Scarnuley) complained to TPD that she has been harassed by a neighbor of her identified as Virginia Silano. See incident report investigated by Off. Silva for further details." (Ex. C. to Opp'n to Trumbull Defs.)

Plaintiffs further allege that Ms. Scarnuly-Grasso furnished the report to the neighborhood association on May 5, 2011 and to DCF on May 19, 2011, but they do not allege defamation against Ms. Scarnuly-Grasso on the basis of this. Further, Plaintiffs allege that "Silva's [August 10, 2010] report was republished again by the Trumbull Police Department on or about February 9, 2011 to George Cooney and/or Diana Cooney." (Compl. at 10.) Plaintiffs do not allege defamation against the Trumbull Police Department.

To establish a prima facie case of defamation, a plaintiff must show that "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky*, 267 Conn. at 217 (internal quotations and citations omitted).

A defamatory statement must be a factual statement, rather than an opinion. *Daley v. Aetna Life & Casualty Co.,* 249 Conn. 766, 795 (1999); *Goodrich v. Waterbury Republican–American, Inc.,* 188 Conn. 107, 111 (1982) ("An opinion . . . is a personal *comment* about another's conduct,

qualifications or character that has some basis in fact").[7] Further, the statute of limitations for defamation under either a libel or slander theory is contained in Conn. Gen. Stat. § 52–597, which provides that "[n]o action for libel or slander shall be brought but within two years from the date of the act complained of." *See Samuel v. City of Hartford*, 154 Conn. App. 138, 142 (2014).

In Connecticut, "with each publication by the defendant, a new cause of action arises." *Cweklinsky*, 267 Conn. at 217. Further, a second person can become liable for republishing a defamatory statement made by another: "[O]ne who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement." *Cianci v. New Times Publishing Co.,* 639 F.2d 54, 60–61 (2d Cir. 1980); Restatement (Second) of Torts § 578 (1977).

---

[7] As one Connecticut Superior Court noted,

> there is consistent authority in jurisdictions around the country which holds that such hyperbolic terms [as "nuts"] are not actionable for defamation. *Lieberman v. Fieger,* 338 F.3d 1076, 1080 (9th Cir.2003) (holding that comments that individual was "Looney Tunes," "crazy," "nuts," and "mentally imbalanced," were protected under First Amendment as statements of opinion, because they did not contain verifiable assertions and could not serve as basis for defamation claim); . . . *Rhodes v. Placer County,* United States District Court, Docket No. 2:09–CV–00489 MCE KJN PS (E .D. Cal. March 31, 2011) (statements made by employee to another that appellant was "crazy" were not defamatory); *Fram v. Yellow Cab Co.,* 380 F.Sup. 1314, 1330 (W.D.Pa.1974) (use of words "paranoid," and "schizophrenic" are not defamatory where plaintiff failed to meet burden of proof that statements referred to actual psychological infliction).

*Sorak v. Companions & Homemakers, Inc.,* No. HHDCV126028007S, 2015 WL 522281, at *4 n.4 (Conn. Super. Ct. Jan. 14, 2015)

Defendants move to dismiss on the basis of the statute of limitations. Because the original complaint was filed on November 7, 2012, more than two years after the August 10, 2010 Incident Report was written, any cause of action arising from the publication of that incident report is time barred. However, if the allegedly defamatory statement were published again within the meaning of the term in Connecticut, a cause of action based on that republication could still be timely.

The Court has identified no case in which mere reference to a previous report amounts to a reassertion of each of the statements in that previous report. As the Connecticut Supreme Court has noted, "Publication is defined in Black's Law Dictionary . . . as the 'communication of defamatory words . . . to some third person capable of understanding their defamatory import . . . .' Common sense dictates that a lay person would understand the term 'publication' to mean the communication of words to a third person." *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of Illinois*, 247 Conn. 801, 810 (1999) (internal citations and alterations omitted). The typical example of repetition of a defamatory statement creating a new cause of action is when a person repeats statements a second time, as in *Holbrook v. Casazza*, 204 Conn. 336, 341 (1987), a case in which the "[the defendant] nevertheless filed another complaint with the supervisor of the OPM in which he repeated his previous accusations." Neither the November 9, 2010 nor the December 1, 2010 Incident Reports repeat the allegedly defamatory statement. For this reason, they cannot be said to constitute republications of the statements. The other instances of republication were attributed to others (Defendant Scarnuly-Grasso, the Trumbull Police Department), but the claim of defamation runs only against Defendant Silva, and he cannot be held liable for their alleged republication.

To rescue their defamation claim against Officer Silva, Plaintiffs argue that leaving the uncorrected police report in the file is part of a continuing course of conduct that tolls the statute of limitations.

> To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong.

*Fichera v. Mine Hill Corporation*, 207 Conn. 204, 209 (1988). "For there to be a genuine issue as to a continuing duty, there must be evidence of either a special relationship between the parties or some later wrongful conduct of the defendant related to the prior act." *Blinkoff v. O & G Industries, Inc.*, 113 Conn. App. 1, 15 (2009) (*cert. denied*, 291 Conn. 913). Plaintiffs have not pleaded a special relationship between Officer Silva and the Plaintiffs. For that reason, the statute of limitations cannot be tolled under the continuing course of conduct doctrine and Count IV must be dismissed as time-barred.

E.     **Count V: Conspiracy to Maliciously Prosecute Ms. Silano**

In Count V, Plaintiffs allege that there was a wide-ranging conspiracy against Ms. Silano by Detective Testi and Officer Silva to retaliate against her for making complaints to the police, to deter her from making further complaints, and additionally working with Detective Hammel to maliciously prosecute her. (Compl. at 14.) Although the Complaint alleges multiple and unconnected goals of the conspiracy which alone do not allege a common scheme, Count V focuses specifically on malicious prosecution and alleges that the overarching goal of the conspiracy was

to prosecute Ms. Silano for harassment and for making an untruthful report of child abuse to the Department of Children and Families. (Compl. at 17.)[8]

Plaintiffs allege that Ms. Scarnuly-Grasso's November 9 complaint to police set off the conspiracy. On November 12, Officer Silva interviewed Ms. Silano in connection with the harassment complaint. His sole contribution to the conspiracy was a refusal to record Ms. Silano's claim that she had witnessed Ms. Scarnuly-Grasso assaulting "a minor child" (*id.* at 12). Plaintiffs then reallege a series of altercations between Ms. Silano and Ms. Scarnuly-Grasso during which Ms. Scarnuly-Grasso tells Ms. Silano that she will call the police if Ms. Silano continues to speak about the alleged child abuse. Plaintiffs then allege that Detective Testi also participated in the conspiracy by interviewing Ms. Silano but failing to record her description of witnessing Ms. Scarnuly-Grasso assault a child.

After Plaintiffs discovered that the police did not report or investigate her allegations of child abuse, Plaintiffs then allege that Ms. Silano made a report to DCF concerning Ms. Scarnuly-Grasso's assault of a child, but the Complaint is silent on when Plaintiff made the complaint, what she said, or how she did so. The Complaint is likewise silent on how DCF conducted its investigation into the abuse and although it alleges that "[o]n or about June 27, 2011, former detective Kevin Hammel deliberately failed to fully and fairly investigate Silano's complaint to DCF

---

[8] Although Plaintiffs' Complaint pleads a civil conspiracy to maliciously prosecute, they shift their theory in opposition to Ms. Scarnuly-Grasso's Motion to Dismiss and, for the first time, claim a conspiracy under 42 U.S.C. § 1985. (Opp'n to Scarnuly-Grasso at 7.) Plaintiffs later reverse course and, in opposition to the Trumbull Defendants' Motion to Dismiss, assert that their conspiracy charge is predicated on the underlying tort of malicious prosecution. Because the reference to § 1985 is raised only in Plaintiffs' memorandum in opposition, and since Plaintiffs appear to abandon that claim later, the Court construes Count V as alleging a conspiracy to maliciously prosecute.

and intentionally intimidated and misquoted a witness . . . " (Compl. at 23), the Complaint does not make clear why Detective Hammel would conduct an investigation on behalf of DCF regarding a report made to DCF about child abuse. The Complaint does allege that DCF found Ms. Silano's report to be unsubstantiated at intake.

The Complaint is similarly silent about the process by which Ms. Silano was arrested. It does not describe an investigation of Ms. Silano and only mentions briefly that Detective Hammel's affidavit in support of an arrest warrant misquoted a witness. The Complaint diagnoses several perceived shortcomings with Detective Hammel's investigation, including witness intimidation, failure to interview other witnesses, and deliberate misquotation of Ms. Silano, but it does not state whether these shortcomings were connected to the investigation for false reporting of child abuse or some other investigation.

Count V does not allege how Ms. Silano's arrest came about, but Count III, discussed above, alleges that

> Scarnuly-Grasso intentionally acted to harass, annoy and alarm Silano by causing her false arrest for harassment and false reporting of child abuse and further harassed, annoyed and alarmed Silano when Scarnuly-Grasso failed to advise the police and prosecutor that her statements were false which caused Silano to be prosecuted for almost five years and then be put to a jury trial in June of 2016 for the charges.

(Compl. at 8.) The Complaint then alleges that both Ms. Scarnuly-Grasso and her children testified in court "that the incident of child abuse didn't occur." (*Id.*)

In Connecticut, a plaintiff claiming civil conspiracy must show (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff. *Garcia v. Hebert*, No.

3:08CV95 DFM, 2014 WL 1316096, at *2 (D. Conn. Mar. 28, 2014), *aff'd,* 594 F. App'x 26 (2d Cir. 2015). Because "there is no independent claim of civil conspiracy . . . to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King,* 266 Conn. 747, 779 (2003) (internal citations and alterations omitted). Here, the underlying tort is malicious prosecution for filing a false report to DCF.

"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Bhatia v. Debek,* 287 Conn. 397, 404 (2008).

A private individual may be held liable for initiating a malicious prosecution "if he has insisted that the plaintiff should be prosecuted" by bringing "pressure of any kind to bear upon the public officer's decision to commence the prosecution." *McHale v. W.B.S. Corp.,* 187 Conn. 444, 448 (1982) (citing *Fatone v. Dedomenico,* 161 Conn. 576 (1971), and *Zenik v. O'Brien,* 137 Conn. 592, 595 (1951)). Alternatively, liability may be found where a private individual "knowingly provides false information to a public officer . . . even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer." *Bhatia v. Debek,* 287 Conn. at 407–08. If a defendant "has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution." *McHale,* 187 Conn. at 448.

Ms. Scarnuly-Grasso argues that Count V should be dismissed for two reasons: first, because Plaintiffs fail to allege that Ms. Scarnuly-Grasso acted in concert with the Trumbull defendants, defeating the conspiracy charge, and second, because Plaintiffs fail to allege two of the

necessary elements for malicious prosecution with respect to any of the Defendants: lack of probable cause and malice.

While the Complaint explicitly alleges that Detective Silva and Officer Testi formed an agreement to retaliate against Ms. Silano and that Detective Hammel later joined this agreement, it does not anywhere allege that Ms. Scarnuly-Grasso formed an agreement or combination with the police. Instead, it relies on Ms. Scarnuly-Grasso's assertion that she was "working with the police," that she threatened to call the police if Ms. Silano continued to talk about allegations of child abuse, and that she furnished police reports to DCF to discredit Ms. Silano.

In fact, the Complaint explicitly contradicts the assertion that Ms. Scarnuly-Grasso worked in concert with the police. Elsewhere in the Complaint, Plaintiffs allege that Ms. Scarnuly-Grasso caused the arrest of Ms. Silano by hiding key facts from the police: she "failed to advise the police and prosecutor that her statements were false" and this silence was what caused Ms. Silano's arrest. (Compl. at 8.) Thus, the Complaint explicitly alleges that, instead of conspiring with the police, Ms. Scarnuly-Grasso deceived them in order to secure Ms. Silano's arrest.

In light of these contradictory allegations and failure to otherwise allege an agreement between the Ms. Scarnuly-Grasso and the police, the conspiracy claim against Ms. Scarnuly-Grasso must be dismissed.

The individual Trumbull Defendants move to dismiss the conspiracy claim on statute of limitations grounds, because Plaintiffs have not alleged lack of probable cause or malice, because Plaintiffs have not alleged that Officer Silva or Detective Testi initiated the prosecution, and because Detective Hammel's reliance on the prosecuting attorney's independent probable cause determination is a complete defense.

The statute of limitations for civil conspiracy to commit a tort is three years under Conn. Gen. Stat. § 52-577. The Trumbull Defendants argue that the conspiracy claim first surfaced in the Amended Complaint, on November 23, 2016. However, in Count Four of the original complaint, Plaintiffs alleged that Detective Testi "agreed and cooperated with Silva to injure, threaten, intimidate and discourage Silano from seeking assistance from the Trumbull Police Department, private investigators and other law enforcement agencies by . . . intentionally . . . creating false reports which cast Silano as not credible, mentally unstable, and therefore not entitled to equal protection under the law" and predicated this agreement and cooperation on, among other things, Detective Hammel's arrest of Plaintiff for false reporting of child abuse. (*See* Original Complaint [Doc. # 1-7] at 9). Reading Plaintiffs' Complaint liberally, the conspiracy allegation of the Amended Complaint relates back to the original pleadings because it "aris[es] out of the conduct, transaction, or occurrence set out" in Plaintiffs' original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B). Indeed, although the conspiracy was not pled as a separate cause of action, the elements were laid out in the original complaint and all individual Trumbull Defendants appeared in the Complaint, although Detective Hammel was not a named defendant at the time.

The Trumbull Defendants then argue that Plaintiff does not overcome the presumption of probable cause afforded by an arrest warrant. For purposes of a malicious prosecution action, as for purposes of a vexatious suit action,

> the legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted.

*Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94–95 (2007). The Trumbull Defendants argue that the issuance of an arrest warrant by a neutral magistrate judge generally creates a "presumption that it was objectively reasonable for the officers to believe that there was probable cause; for this reason, a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Amory v. Katz*, 3:15-cv-01535 (VAB), 2016 WL 7377091, at *7 (D. Conn. Dec. 19, 2016) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

To overcome this presumption, "a plaintiff must show that the officer knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." *Kaskel v. Compagnone,* No. 15-3802-CV, 2016 WL 6885701, at *1 (2d Cir. Nov. 22, 2016). "In determining whether omitted information was necessary to the finding of probable cause, we look to the hypothetical contents of a 'corrected' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable cause to make the arrest as a matter of law." *McColley v. Cty. of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014).

Here, the Complaint remains silent on the arrest warrant and the affidavit Detective Hammel filled out in support thereof except for the allegation that Detective Hammel misquoted and intimidated Ms. Brown "because Brown's statements didn't support Hammel's arrest of Silano for false reporting of child abuse." (Compl. at 15.)[9]

---

[9] The Complaint also alleges that Detective Hammel failed to follow up with several witnesses, but does not explain whether these witnesses were connected to the allegations of child

Read in connection with the Complaint's allegations that Ms. Scarnuly-Grasso hid key facts from the police and that both Ms. Scarnuly-Grasso and her children testified at trial that no abuse occurred, Plaintiffs have not adequately pled that the Detective Hammel lacked probable cause to apply to the prosecutor for a warrant seeking the arrest of Ms. Silano. The Complaint sets forth that DCF found Ms. Silano's complaint of child abuse unsubstantiated at intake and that Defendant Scarnuly-Grasso intentionally "failed to advise the police and prosecutor that her statements [about the child abuse] were false," which "caused" her arrest and subsequent prosecution. (Compl. at 8.)

The contradictory allegations of the Complaint, which allege both that Defendant Scarnuly-Grasso conspired with police to have Ms. Silano arrested but contradictorily that she deliberately misled the police thereby causing Ms. Silano's arrest, show the lack of plausible allegations of conspiracy in Count V. The string of unconnected events recounted in the Complaint, held together solely by conclusory allegations of agreement between Defendants does not plausibly allege a conspiracy. Further, having failed to adequately plead the underlying tort of malicious prosecution, the allegations of conspiracy must fail against all the Trumbull Defendants. For these reasons, Count V must be dismissed.

### F. Count VI: Monell Claim

In Count VI, Plaintiffs bring a Monell claim against the Town of Trumbull on the basis of an alleged policy and custom of refusing police service to and humiliating individuals the department regards as mentally disabled.

---

abuse and makes clear that some had no knowledge of the alleged abuse because they witnessed different altercations.

The Supreme Court held in 1978 that municipalities can be sued under § 1983 for the constitutional violations of their employees if those actions occurred pursuant to policy, practice or custom, creating a so-called "Monell claim." *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 692 (1978); *see also Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 122 (2d Cir.1991). "To prevail [on a Monell claim], a plaintiff must identify the existence of a municipal policy or practice that caused [an] alleged constitutional violation." *Mitchell v. City of N.Y.*, 841 F.3d 72, 80 (2d Cir. 2016). To show causation, plaintiffs must show that the official policy, practice or custom was the "moving force [behind] the constitutional violation," *Dodd v. City of Norwich,* 827 F.2d 1, 5 (2d Cir.1987), which is to say that it actually *caused* the constitutional deprivation. *See Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999).

Although Plaintiff does not always make clear whether the allegations run against the police officers in their official capacity, she does allege that "Silva in his official capacity as an officer of the Trumbull Police Department interviewed Silano at her home concerning Scarnuly-Grasso's harassment complaint." (Complaint at 21.) Similarly, "[o]n . . . December 1, 2010, Testi in his official capacity as an officer of the Trumbull Police Department interviewed Silano over the phone." (*Id.* at 22.) This was the meeting at which he allegedly informed her of Trumbull's policy. By contrast, nowhere in the Complaint do Plaintiffs allege that the officers were acting in their individual capacity. For this reason, the Court construes the Complaint to run against the officers in their official capacity only.

The Trumbull Defendants argue that the Monell claim cannot run against the Town of Trumbull and the officers acting in their official capacities simultaneously. (Trumbull Mot. to Dismiss at 8.) "Because an official capacity claim against an official is tantamount to a claim against a governmental entity, when a complaint asserts a 42 U.S.C. § 1983 claim against both a municipal

28

entity and a municipal official in his official capacity, the official capacity claim should be dismissed as duplicative or redundant." *Odom v. Matteo*, 772 F. Supp. 2d 377, 392 (D. Conn. 2011) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)). Plaintiffs do not challenge this argument in their Opposition. For this reason, the Court construes the Monell claim to run only against the Town of Trumbull.

Defendants then argue that the Monell claim is untimely and that the Plaintiffs have failed to allege either that Trumbull had a policy of discriminating against persons perceived as mentally ill or that the Town of Trumbull was on notice of the practice and did nothing. (Trumbull Mot. to Dismiss at 25.)

Congress has not prescribed a statute of limitations for constitutional causes of action under § 1983. In the absence of guidance from Congress, the Second Circuit has instructed that the statute of limitations must be borrowed from analogous state law limitations periods and that the analogous state law limitations period for a § 1983 action in Connecticut is three years. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (citing Conn. Gen. Stat. § 52-577); *see also Nowacki v. Town of New Canaan*, No. 3:16-CV-00407 (JAM), 2017 WL 1158239, at *7 (D. Conn. Mar. 28, 2017).

Although state law determines the length of the statute of limitations for a § 1983 action, it is federal law that determines when the statute of limitations period begins to run. The Second Circuit in *Pinaud* held that where the injury is known, but the policy or custom of the municipality that caused the harm is not known, the statute of limitations does not begin to run until it is "clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995).

Here, Plaintiffs allege a series of incidents in which the Trumbull police refused to record reports Ms. Silano made to the police, arrested her, or issued her citations that occurred beginning in 2010. Plaintiffs then allege that they were made aware on December 1, 2010 of Trumbull's alleged discriminatory policy when Detective Testi informed her of the town's policy during a telephone interview. Under *Pinaud*, the limitations period thus began running on December 1, 2010, when Plaintiffs were made aware of this policy.

Despite becoming aware of the policy on December 1, 2010, Plaintiffs did not raise this claim in their original complaint. The Town of Trumbull was not a defendant to that complaint, and although the December 1, 2010 telephone conversation was described in the original complaint, Plaintiffs did not originally allege that Detective Testi informed her of the town's policy. However, as discussed above, because the Monell allegations arise from the same transactions or occurrences described in the original complaint, and because the Court construes a pro se plaintiff's pleadings liberally, the allegations can be deemed to relate back under Fed. R. Civ. P. 15(c)(1)(B).

Defendant next urges dismissal on the ground that the Complaint makes only a conclusory allegation that the Town of Trumbull has a policy of discriminating against persons perceived to be mentally disabled. "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Ying Jing Gan v. City of New York*, 996 F. 2d 533, 536 (2d Cir. 1993). Here, however, Plaintiffs' complaint alleges that a police officer told her of this policy during a specific conversation. Thus, the allegation is not merely conclusory.

Despite this non-conclusory allegation of the town's policy, other allegations in the complaint undermine the claim that such a policy exists. After alleging that the Town of Trumbull

has a policy of discriminating against persons who are mentally ill by withholding police services, Plaintiffs then allege that Detective Hammel "acted to conceal the policy and custom . . . by utilizing Diana Cooney, an individual known to Hammel to have been under the care of a psychoanalyst, who has brain damage, and suffers from retrograde amnesia to arrest Silano three more times . . . ." (Compl. at 26-27). Plaintiffs specify that Detective Hammel provided Ms. Cooney with his private cell phone and interviewed witnesses on her behalf. In other words, Plaintiffs allege that, in order to conceal the policy of not providing police services to those regarded as mentally disabled, Detective Hammel provided police services to a person he regards as mentally disabled. This allegation of a cover-up, however, simply makes implausible that there was such a policy or that the individual police officers engaged in such a practice.

Furthermore, Plaintiffs must also allege a sufficient causal relationship between the violation and the municipal policy or practice. In describing the conduct which is claimed to demonstrate a practice of withholding services from mentally disabled persons, the Complaint imputes retaliatory motives to the police officers that have no connection with the alleged departmental policy of discriminating against persons with perceived mental disabilities: "[a]t the time Silva wrote his report, Silva acted in retaliation against Silano for exercising her First Amendment rights." (Compl. at 20.) "At all times relevant to this count, Trumbull police officers Silva and [Non-party] Wheeler, and detectives Hammel and Testi acted to retaliate against Silano for her exercise of her First Amendment Rights."[10] (Compl. at 25.)

---

[10] Plaintiffs explicitly abandoned any First Amendment claims or retaliation claims at oral argument.

Plaintiffs allege that the policy was a mere pretext exploited by the individual police officers to exact retaliation: "at all times relevant to this count, the conscious objective of Silva, Wheeler, Testi, and Hammel was to defame Silano and portray Silano as mentally disabled, which label they knew would result in the policy makers at the Trumbull Police Department allowing them to engage in the Department's custom or policy to withhold police services . . . ." (*Id.* at 25.) Thus, the custom or policy is not alleged as the cause, but rather one of the means by which the four individuals retaliated.

In sum, Plaintiffs have not alleged facts sufficient to plausibly support the existence of a policy of withholding police services from persons perceived to be mentally disabled. Further, Plaintiffs have not sufficiently alleged that the Town policy caused the harms of which Plaintiffs complain. For these reasons, the Monell claim fails.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' motions to dismiss. The Court DENIES Ms. Scarnuly-Grasso's Motion to Dismiss as to Counts I and II for defamation *per se*; GRANTS Ms. Scarnuly-Grasso's Motion to Dismiss as to Count VII for slander *per se* with prejudice; GRANTS Ms. Scarnuly-Grasso's Motion to Dismiss as to Count III for negligence *per se* with prejudice, GRANTS the Trumbull Defendants' Motion to Dismiss as to Count IV for defamation as time barred with prejudice; GRANTS both parties' Motions to Dismiss as to Count V, the conspiracy to maliciously prosecute with prejudice, and GRANTS the Trumbull Defendants' Motion to Dismiss as to Count VI, the Monell claim, with prejudice. Having granted the Motion to Dismiss the only federal count, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over the remaining state defamation claims against

Defendant Scarnuly-Grasso and remands the action to the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut for resolution of Counts I and II.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of June 2017.